IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| BDC CAPITAL, INC., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-01594-GBL-JFA |
| | ) | |
| THOBURN LIMITED PARTNERSHIP, *et al.*, | ) | |
| | ) | |
| Appellees. | ) | |

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Appellant BDC Capital Inc.'s Motion for Stay Pending Appeal. BDC Capital ("BDC") appeals an Order of the Bankruptcy Court for the Eastern District of Virginia ("Bankruptcy Court") confirming the Fifth Amended Reorganization Plan in the Chapter 11 case of the Thoburn Limited Partnership and John M. Thoburn.

The issue before the Court is whether the Court should grant BDC's Motion for Stay Pending Appeal of the Order of Confirmation of the Fifth Amended Reorganization Plan in the Chapter 11 case of Thoburn Limited Partnership and John M. Thoburn. The Court DENIES BDC's Motion for Stay Pending Appeal because BDC has failed to satisfy the four factors that the Court must consider when deciding whether to grant a stay. Specifically, BDC failed to demonstrate that: (1) BDC would likely succeed on the merits on appeal; (2) BDC would suffer irreparable harm if a stay was denied; (3) the balance of equities tips in BDC's favor; and (4) a stay will serve the public's interest.

# I.   BACKGROUND

This case arises from the Chapter 11 bankruptcy case of the Thoburn Limited Partnership and John M. Thoburn. The Thoburn Limited Partnership ("TLP"), Hunter Mill East, L.L.C. ("HME") and Hunter Mill West, L.C., ("HMW") (hereinafter "Thoburn Entities") along with John Thoburn, Rosemary Thoburn and Renee Thoburn, own 74.54 acres of real property ("the Property") valued at $34,100,000. (Doc. 13-6, at 7.) BDC Capital, Inc. ("BDC") is in the business of lending money, and issued three loans to the Thoburn Entities over the course of a number of years. (*Id.* at 400.) BDC borrowed the money it lent to the Thoburn Entities from TD Bank, First Virginia Community Bank, and BB&T Bank. (*Id.*) BDC pledged HME's note and deed of trust as collateral for the loan to TD Bank. (Doc. 4, at 6.) BDC also pledged HMW's note and deed of trust as collateral for the loans to BB&T Bank and First Virginia Community Bank. (Doc. 4, at 8.) BB&T later transferred the loan to HM Investments LC ("HMI"). (*Id.*) On July 21, 2011, BDC filed a Chapter 11 petition for bankruptcy in the Bankruptcy Court for the Eastern District of Virginia ("Bankruptcy Court"). (Doc. 11, at 1.) Subsequently, on February 27, 2012, TLP and Mr. Thoburn filed a Chapter 11 petition for bankruptcy. (*Id.*) On November 9, 2012, HMW and HME also filed Chapter 11 petitions for bankruptcy. (*Id.* at 2.) The Bankruptcy Court consolidated TLP and Mr. Thoburn's petition with the HMW and HME petitions on December 27, 2012. (*Id.*)

The resulting consolidated property, called the Assemblage, is well situated on the Dulles Toll Road and near a future Metro Station on the Silver Line that will connect Dulles International Airport to Washington, D.C. (Doc. 13-3, at 350–51.) Half of the Metro line construction is underway while the other half is scheduled for completion within several years. (*Id.*)

On June 27, 2012, BDC and TD Bank filed proofs of claim in Mr. Thoburn's case. (Doc. 11, at 2.) On March 13, 2013, BDC and HMI filed proofs of claim in the HME case. (*Id.* at 3.) Finally, on March 13, 2013, BDC and TD Bank filed proofs of claim in the HMW case. (*Id.*) In an attempt to determine whether its creditors had the right to vote on the Thoburn Entities' reorganization plan, BDC filed a Motion to Determine BDC's Entitlement to Voting Rights, 1111(b) Election, and Right to Payment on May 28, 2013. (Doc. 13-3, at 326.)

On August 1, 2013, the Bankruptcy Court entered a Memorandum Opinion and Order holding that TD Bank and First Virginia Community Bank hold BDC's claims against HMW, and have a right to vote because the applicable loan documents provided that "upon default, all payments are to be made to the respective bank, not to BDC." (*Id.* at 354, 357.) On August 19, 2013, the Bankruptcy Court entered an Order holding that HMI is the holder of BDC's claims against HME, and has the right to vote because the loan documents also provided that payments be made to BB&T upon default. (*Id.* at 355, 375.)

**Fifth Amended Reorganization Plan**

The Thoburn Entities and John M. Thoburn (hereinafter "The Debtors") filed a Fifth Amended Reorganization Plan ("the Plan") on November 8, 2013. (Doc. 11, at 4.) The Plan was based on a Purchase and Sale Agreement dated March 7, 2013 (the "Pulte contract"), between the Debtors and Pulte Home Corporation ("Pulte"). (Doc. 13-6, at 354.) The Property might eventually be sold for $52,000,000.00. (Doc. 4, at 11.) The Debtors' property will be rezoned and developed under the Plan. (Doc. 13-6, at 172.) "The Debtors will refinance the existing first-priority secured obligations on the property on the Effective Date of the Debtors' chapter 11 plan (the "Plan"), with the Debtors' remaining obligations to be paid upon the sale of the property to Pulte." (*Id.*) Dashco, Inc. ("Dashco") will provide the loan to finance the Plan (the "Refinance

Loan"). (*Id.*) G&G, Inc. ("G&G") will also participate in the Refinance Loan. (*Id.*) Under the Plan, the amount due on BDC's loans would be paid directly to TD Bank and First Virginia Community Bank. (*Id.* at 228–29.) Additionally, $6,658,387.58 would be paid directly to HMI and $3,593,191.49 would be paid to BDC. (*Id.* at 228.) The Plan provided that TD Bank and First Virginia Community Bank should hold payments received "pending final determination of the amounts owed by BDC" to each bank. (*Id.* at 228–29.) All creditors including TD Bank, First Virginia Community Bank and HMI voted in favor of the Plan. (Doc. 4, at 10–11.) BDC voted against the Plan and filed objections to the Plan. (*Id.* at 11.)

On December 2, 2013, the Bankruptcy Court entered an Order Confirming the Plan. (Doc. 13-6, at 343.) On December 16, 2013, BDC filed a Notice of Appeal of Order Confirming the Plan in the District Court for the Eastern District of Virginia. (*Id.* at 397.) Concurrently, BDC filed a Motion for Stay Pending Appeal in the Bankruptcy Court. (*Id.* at 400.) On December 20, 2013, the Bankruptcy Court entered an Order denying the motion to stay for four reasons:(1) BDC is unlikely to prevail on the merits on appeal, (2) BDC overstated the harm to which it is exposed, (3) there will clearly be substantial harm to other interested parties, and (4) the public's interest will be best served by consummating the Plan. (Doc 1-1, at 105–106.) Subsequently, on January 16, 2014, BDC filed its Motion for Stay Pending Appeal in the District Court for the Eastern District of Virginia. (Doc. 4, at 1.) On February 28, 2014, the Court heard oral arguments on the Motion for Stay Pending Appeal. (Doc. 20.)

## II.   DISCUSSION

### A. Standard for a Stay Pending Appeal

Federal Rule of Bankruptcy Procedure 8005 provides that "a motion for a stay of the judgment, order, or decree of a bankruptcy judge... pending appeal must ordinarily be presented

to the bankruptcy judge in the first instance." F.R. Bankr. P. 8005. As BDC previously filed a motion to stay in Bankruptcy Court, the current Motion is properly before this Court.

The Court applies the same standard for a stay pending appeal as for a preliminary injunction. *Coler v. Draper*, No. WDQ-12-2020, 2012 WL 5267436, at *3 (D. Md. Oct. 23, 2012); *Cont'l Sec. Corp. v. Shenandoah Nursing Home P'ship*, 188 B.R. 205, 208 (W.D.Va. 1995) (quoting *Long v. Robinson*, 432 F.2d 977 (4th Cir. 1970)). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To determine whether to grant injunctive relief, the movant must establish four factors: (1) that the movant will likely succeed on the merits on appeal, (2) that the movant will suffer irreparable injury if the stay is denied, (3) the balance of the equities tips in its favor, and (4) an injunction is in the public interest. *Id.* at 20; *The Real Truth About Obama, Inc. v. F.E.C.*, 607 F.3d 355, 355 (4th Cir. 2010) (reissuing *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345–47 (4th Cir. 2009)); *Farkas v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 861 F. Supp. 2d 716, 723 (E.D. Va. 2012) ("In considering whether a stay is appropriate pending the outcome of an appeal, the Court must use the factors announced in *Winter*[.]"). All four requirements must be satisfied. *The Real Truth About Obama*, 575 F.3d at 346.

**B. Analysis**

The Court denies BDC's Motion for Stay Pending Appeal because BDC has failed to satisfy the four requirements for a stay. First, BDC did not present any authority to demonstrate that it would likely succeed on the merits of the appeal. Second, BDC failed to establish that it would suffer irreparable harm if the stay was denied. Third, a stay may delay the Pulte sale which could cause substantial harm to the other parties. Fourth, a stay would delay development

of the intersection which would not serve the public's interest. Thus the Court denies BDC's Motion for Stay Pending Appeal.

1.    <u>Likelihood of Success on the Merits</u>

The Court finds that BDC is unlikely to prevail on the merits on appeal for two reasons. First, BDC does not provide any case law in support of why it would likely succeed on the merits. Second, BDC's creditors have a right to vote on the Plan because the collateral agreements provide BDC's creditors with control over the collateral in the event of BDC's continuous default.

In order to receive a stay pending appeal, BDC must make a strong showing that it would succeed on the merits on appeal. A district court reviews a bankruptcy court's findings of fact for clear error and legal questions *de novo*. *Fuentes v. Stackhouse*, 182 B.R. 438, 440 (E.D.Va. 1995). Additionally, a bankruptcy court's approval of a settlement is reviewed for abuse of discretion. *Id.*

In its Motion, BDC argued that the Bankruptcy Court erred by (1) ruling that the Fifth Amended Reorganization Plan was fair and equitable because it stripped BDC of its first lien position, (2) ruling that portions of BDC's claims were unsecure, (3) confirming the Plan despite BDC's objections since the Plan "did not provide for appropriate post-petition interest, attorneys' fees, or post-confirmation interest," (4) confirming the Plan even though BDC's claims were converted to unsecured claims, (5) refusing to delay proceedings until BDC refinanced its own debts, (6) allowing TD Bank, First Virginia Community Bank and HM Investments, LC to vote on the proposed Plan. (Doc. 13-6, at 416–18.) Finally, during the February 28, 2014 hearing, BDC argued that since no case law exists that deals with the specific issues on appeal, it is just as likely as the other parties to succeed on the merits.

The Court finds that the linchpin of BDC's appeal is whether the Bankruptcy Court erred in finding that BDC's secured creditors are the holders of the Thoburn Notes and have the sole right to exercise all rights and remedies available thereunder (including voting rights). The remaining issues identified by BDC are tangential, highlighting the ramifications of the Bankruptcy Court's holding that BDC no longer controls its claims against the Debtors.

First and foremost, the Court emphasizes that BDC has not offered any case law or any other authority to support its contention that the Bankruptcy Court erred or abused its discretion. The Court cannot accept BDC's argument that it is just as likely as the other parties to succeed on appeal because the standard for a stay requires that BDC has the burden to show that it is *likely to succeed* as compared to being just as likely to succeed as the other parties. Second, BDC's creditors, TD Bank, First Virginia Community Bank and HM Investments, LC, have the right to vote on the Plan because BDC's creditors hold a claim on the collateral and thus the right to receive payment from the Thoburn Entities and Mr. Thoburn. Federal Rule of Bankruptcy Procedure 3001(e)(3) provides that

> If a claim... has been transferred for security before proof of claim has been filed, the transferor or transferee or both may file a proof of claim for the full amount...If the transferor or transferee does not file an agreement regarding its relative rights respecting voting of the claim, payment of dividends thereon, or participation in the administration of the estate on motion by a party in interest and after notice and a hearing, the court shall enter such orders respecting these matters as may be appropriate.

Fed. R. Bankr. P. 3001(e)(3).

A claim is defined as a "right of payment." 11 U.S.C. § 101(5)(A) (2010). Furthermore, a "holder of a claim ... may accept or reject a plan." 11 U.S.C. § 1126(a) (2012). Here, each of the assignments on the pledged collaterals gives BDC's creditors the right to exercise full control over the collateral if BDC defaulted. The Collateral Pledge Agreement with TD Bank states:

> Secured Party shall have the following rights, each of which may be exercised at Secured Party's sole discretion (but without any obligation to do so), at any time during the continuation of any Event of Default, without further consent to Pledgor: ...(iii) release, surrender or exchange any of the Pledged Collateral at any time, or to compromise any dispute with respect to the same.

(Doc. 11, at 17). In the Commercial Pledge Agreement with First Virginia Community Bank, "Lender may ... (3) compromise, compound or release any obligation, with any one or more obligors, endorsers, or Guarantors of the Indebtedness as Lender deems advisable, without obtaining prior written consent of Grantor....")." (*Id.* at 23.) Finally, the Assignment of Deed of Trust Note as Collateral with BB&T Bank states, "so long as the obligations, or any part thereof, shall remain unpaid, at its option, following an Event of Default hereunder...the Bank may exercise all of the rights of an unconditional owner or holder of the Note." (*Id.* at 29.)

In interpreting the plain language of these contracts, the Court finds that these agreements provide BDC's creditors the right to essentially stand in BDC's shoes with respect to the pledged collateral in the case of a default. There is no reason to believe that this would not include the right to vote to confirm the Plan. Since BDC has been in default since 2011, BDC offers no guarantee that it would be able to refinance its loans now given that it has not paid its creditors for three years. As such, when interpreting the language of the collateral pledge agreements, it seems that because of BDC's default, BDC's creditors now have a right to vote on the Plan and as such, BDC has not demonstrated that it is likely to succeed on appeal. Since BDC's remaining arguments are consequences of the creditors' vote for the Plan, BDC is also unlikely to succeed on the merits of those claims.

## 2.    Likelihood of Irreparable Harm to the Moving Party

The Court finds that BDC is unlikely to suffer irreparable harm for four reasons. First, the harm BDC alleges is quantifiable and therefore not irreparable. Second, BDC's claims are

already unsecured and consummation of the Plan would actually lead to the greatest chance of a full recovery. Third, dissipation of funds to diverse parties does not constitute irreparable injury. Finally, the possibility that the appeal would become equitably moot does not constitute irreparable injury.

Courts have held that there is no irreparable harm where "the harm suffered by the moving party may be compensated by an award of money damages at judgment." *Cont'l Sec. Corp.*, 188 B.R. at 209. Courts have only identified two limited circumstances that constitute irreparable harm. First, "there may be irreparable harm where the moving party's business cannot survive without a [stay] or 'where damages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected.'" *Id.* Second, courts have found irreparable harm "when the failure to grant relief creates a permanent loss of customers to a competitor or the loss of goodwill." *Id.* However, "an appeal being rendered moot does not itself constitute irreparable injury." *In re Shenandoah Realty Partners, L.P.*, 248 B.R. 505, 510 (W.D.Va. 2000).

BDC asserts that it would suffer irreparable harm because the Plan would relegate BDC to an unsecured position on the HMI debt causing the loss of thousands of dollars, and the funds, having been distributed to multiple parties, would be difficult to recover. (Doc. 4, at 15.) BDC also asserts that it would suffer irreparable harm because the appeal may be rendered equitably moot without a stay. (*Id.*) First, BDC has not identified any harm that could not be compensated by money damages at judgment. The two limited instances where a court could find irreparable harm are inapplicable in this case. BDC did not assert that its business would not survive without a stay or that the Debtors would become insolvent prior to application of the judgment. BDC's assertions addressed the harms that would result from the Plan instead of the harm that would

9

result without a stay. Additionally, even though BDC is relegated to the position of an unsecured creditor, the Plan has scheduled full payment to all unsecured creditors after the Pulte sale. (Doc. 13-6, at 230.) The payment depends on the sale, which, if a stay is granted, would delay the process and likely cause harm to all the parties involved, including BDC.

Furthermore, "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." 11 U.S.C. § 506(a)(1) (2012). Because the value of the Assemblage sold separately is less than the $15,046,296.57 owed, BDC's claims are already unsecured without the Plan. (Doc. 13-6, at 228.)

Additionally, the only authority that BDC cited to contend that irreparable harm results from distribution of funds to multiple parties is from the Second and Ninth Circuits. Not only are those cases only persuasive authority, and not mandatory, but the facts are distinguishable from BDC's circumstances. The Second Circuit case specifically addresses distribution of funds in regard to foreign proceedings and debtors. *See In re Netia Holdings, S.A.*, 278 B.R. 344, 357 (Bankr. S.D.N.Y. 2002) (citing *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1992) (stating that irreparable harm exists where there is a premature piecemeal distribution of assets involved in a foreign liquidation)). Furthermore, the Ninth Circuit applied a standard for irreparable harm that required only a "possibility" not a "likelihood" of irreparable harm to hold that dissipation not distribution of assets constituted irreparable harm. *See Rubin v. Pringle (In Re Focus Media, Inc.)*, 387 F.3d 1077, 1086-87 (9th Cir. 2004) (holding that the possibility of irreparable harm exists where debtor made away with some funds prior to the proceedings). These cases are inapplicable here since all parties involved are domestic creditors and debtors, and the standard of review is "likelihood" of irreparable harm, not "possibility." Moreover, the Debtors have not

made away with funds prior to these proceedings. Finally, the fact that an appeal may become moot without a stay does not alone constitute irreparable harm. *In re Shenandoah Realty Partners, L.P.*, 248 B.R. at 510. As a result, the Court finds that BDC will not be irreparably harmed absent a stay.

### 3.   Balance of the Equities

The Court finds that the balance of the equities is not in BDC's favor because the other parties will suffer substantial harm if the Assemblage is not sold. A stay would delay consummation of the Plan which would allow interests and administrative fees to accrue, and could render the Assemblage less attractive to sell.

In determining whether the balance of equities tips in favor of the movant, the Court must balance the likelihood of irreparable harm to BDC against the likelihood of substantial harm to the non-movants. *Cont'l Sec. Corp.*, 188 B.R. at 208 (quoting *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994)).

BDC argues that the other parties would not suffer substantial harm because the stay would not prevent the sale to Pulte Home Corporation and that BDC's creditors would receive adequate protection payments. The Court finds that further delay would substantially harm all the parties. The Debtors' bankruptcy proceedings have continued for over a year and have involved four other unsuccessful reorganization plans. Further delay could make the Assemblage less attractive to finance because of the accrual of interest and administrative fees. (Doc. 11, at 11.) The revenue from the sale of the Assemblage will pay the secured and unsecured claims and if the sale is hindered, the likelihood that all parties' claims would be satisfied would decrease. As a result, the Court finds that granting a stay will substantially harm the other parties and this harm outweighs BDC's alleged irreparable harm.

4.    Public Interest

The Court finds that a stay will not serve the public's interest because a delay would impede development of the area, which will prevent the public's enjoyment of the new Metro Silver Line. "The Thoburn Assemblage is highly desirable because it is located near Hunter Mill Road, the Dulles Toll Road, and Wiehle State on the new Silver Line of the Washington D.C. Metro Subway System." (Doc. 4, at 9.) The introduction of the new Metro line will add to the transportation infrastructure and provide a desirable location for real estate development. (Doc. 13-6, at 72.) The proposed Plan includes rezoning and developing the intersection. (Doc. 13-6, at 172.) The public's interest lies in not delaying consummation of the Plan. Consummation will allow development of the intersection and the public's interest will be well served by the improvements that would result from the development.

Additionally, BDC has not alleged a public interest that would be served by granting a stay. Consequently, the Court finds that the public's interest would not be served by granting a stay.

### III.    CONCLUSION

The Court DENIES BDC Capital's Motion for Stay Pending Appeal because BDC has failed to establish the four requirements to receive injunctive relief: likelihood of success on the merits of the appeal, irreparable harm to the movant, balance of the equities tip in favor of the movant, and the public's interest weigh in favor of a stay.

IT IS HEREBY ORDERED that BDC Capital's Motion for Stay Pending Appeal (Doc. 4) is DENIED.

ENTERED this _____ day of April 2014

Alexandria, Virginia
4/14/2014

                                        /s/
                                        Gerald Bruce Lee
                                        United States District Judge

12